IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

MICHAEL F.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:19-cv-04062-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 9) and the Commissioner's Motion for Summary Affirmance (Doc. 12). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Michael F. filed an application for supplemental security income (SSI) on June 23, 2015, alleging disability beginning on June 12, 2005. His SSI claim was denied initially on January 27, 2016 and upon reconsideration on April 5, 2016. Michael filed a request for hearing concerning his application which was held on December 11, 2017 before the Honorable David Bruce (ALJ). At that hearing, Michael was represented by an attorney and a vocational expert (VE) testified. Following the hearing, Michael's SSI claim was denied on March 13, 2018. His

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 6) on the docket.

request for review by the Appeals Council was denied on February 14, 2019, making the ALJ's Decision the final decision of the Commissioner. Michael filed the instant civil action seeking review of the ALJ's Decision on March 21, 2019.

## II

At the hearing, Michael was 30 years old and lived with his mother, grandmother, and aunt. He claimed the following conditions limited his ability to work: Marfan syndrome; epigastric pain; and anxiety. AR 208. He finished high school, though he was never in the armed forces and never had a job outside of his home.

In response to the ALJ's question as to what kept him from getting a job outside of the home where Michael would have to get up and go to work every day, Michael answered, "Maybe the – maybe the dangerous part of the severance or – or how people can back up – can cause come out of nowhere whatever. People can kill in the streets." AR 58. Michael did not have a driver's license. He regularly saw his gastroenterologist (whom he thought was his heart doctor), Robert Glickenberger, M.D., and he saw Advanced Practice Nurse (APN) Stacy Roth for counseling once every four weeks. APN Roth did not provide Michael medicine, she "just help[ed] [him] feel more relaxed." AR 59. Michael testified he took amitriptyline for his anxiety and took other pills for his stomach problems.

Michael confirmed that he rarely left his house, and his mother drove him and his grandmother to the hearing. He only shopped if he was with his grandmother or mother. He had friends from high school but no longer saw them. He did not interact on social media. He testified that he felt his anxiety medication was "kind of helping." AR 61. During a normal day, Michael spent his time playing Nintendo games and relaxing in a chair or a bed.

Upon questioning by his attorney, Michael testified that his anxiety and panic-type symptoms started after he got out of high school. He spent most of the

time while he was at home alone. He did not think he would be able to get to an appointment with either APN Roth or Dr. Glickenburger on his own by public transportation if his mother and grandmother were unable to take him. Michael had never taken the bus by himself or with somebody. He was given a chance to try to get his driver's license when he was younger, but he was too nervous to do so. He was able to remain fairly calm when he was in his room by himself and not socializing with others, but it felt different to him when he had to go out of the house and relate to people outside of his home.

      The ALJ then asked the VE some questions. The ALJ first pointed out that Michael had no past relevant work "as far as Social Security goes." AR 67. The ALJ asked the VE to assume the following hypothetical individual:

> [An] individual of the same age and education as the Claimant. The same type of work history. I'm going to limit this hypothetical individual to less than the full range of light work in that in addition, they would be limited to simple routine tasks and simple work-related decisions which I define as SVP 1 and 2 type jobs. And in this first hypothetical I would suggest this hypothetical individual would be limited to no more than occasional interaction with coworkers, supervisors and the public. I'm defining occasionally the same way that the DOT and SCO does.

AR 67-68. The VE answered such a hypothetical individual could perform work at the unskilled light level as a cleaner, bench packager, and sorter. If the hypothetical individual was limited to no interaction with coworkers and the public and only occasional interaction with supervisors, the VE testified there would be no work for that hypothetical individual. The VE elaborated that an individual limited to unskilled types of occupations was going to be required to have a minimum of occasional interaction with coworkers.

      In response to Michael's attorney's question, the VE testified that employer tolerance for absenteeism could be as low as one day per month to a maximum of

two days per month. As for the individual's need to have with him either a family member or a job coach in order to stay on task and be efficient enough and productive enough to do the work, the VE explained "[t]hat would be more in the neighborhood of supported work. There would be no – a competitive employment that individual could perform." AR 70.

### III

At Step Two, the ALJ determined Michael had the following severe impairments: Marfan syndrome and anxiety. AR 37. The ALJ also determined at that step that Michael's allegations of epigastric pain[2] were not supported by objective medical evidence, and the record did not contain clinical signs or laboratory findings establishing the existence of that condition. At Step Three, the ALJ considered Michael's Marfan syndrome under Listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 1.04 (Disorders of the spine), 4.02 (Chronic heart failure), and 4.04 (Ischemic heart disease). AR 38. The ALJ also considered whether Michael's mental impairment met or medically equaled the criteria of Listing 12.06 (Anxiety and obsessive-compulsive disorders), and the ALJ specifically considered the "paragraph B" criteria of Listing 12.06. He found Michael had: moderate limitation in understanding, remembering, or applying information; marked[3] limitation in interacting with others; moderate limitation with regard to concentrating, persisting, or maintaining pace; and moderate

---

[2] The ALJ cited to records which included that Michael complained of "abdominal pain" on the left side of his abdomen. *See, e.g.,* AR 274, AR 376, and AR 432.

[3] While the ALJ stated several times that Michael had "marked limitations" in the functional area of interacting with others, there is one instance in which the ALJ stated, "In interacting with others, the claimant has moderate limitation." It is obvious from a review of the entire Decision that the ALJ's use of "moderate" in that on instance was a typographical error. The Commissioner makes no argument that the ALJ found only moderate limitation in that functional area. Instead, the Commissioner argues in his brief that, "Substantial evidence supports the ALJ's determination that occasional social interactions were sufficient to account for Plaintiff's *marked* difficulties in this area." Dft's MSA (Doc. 12-1 at pg. 5) (emphasis added).

4

limitation in adapting or managing oneself. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he can perform only simple, routine tasks, make only simple, routine decisions, and is limited to no more than occasional interaction with supervisors, coworkers, and the public.

AR 41.

In his discussion of the evidence, the ALJ included Michael's report that he had problems with going out alone, driving a car, shopping in stores, completing tasks, and handling stress or changes in routine. The ALJ noted Michael's testimony that he experienced severe anxiety which caused difficulty going out in public, and his testimony that he dealt with stomach issues as well. The ALJ also detailed the medical evidence pertaining to Michael's anxiety. Michael complained of anxiety as early as July 2015, though a psychological status examination at that time indicated full orientation with appropriate mood and affect. In July 2015, Michael was referred for treatment with a psychiatrist. In September 2015, Michael was diagnosed with anxiety along with agoraphobia with panic disorder. At the time he was diagnosed, Michael complained of feeling anxious and fearful, nausea caused by his anxiety, and problems with the thought of leaving the house. Michael's anxiety and agoraphobia complaints continued into June 2017.

Michael underwent a consultative examination performed by John Zagotta, Psy.D on January 6, 2016. At that time, Dr. Zagotta made the following "general observations:"

> [Michael] approached the evaluation and evaluator in a cooperative manner but appeared to be shy and uncomfortable with the evaluator. Claimant's mood was anxious and affect was congruent. Claimant appeared to be fidgety and seemed to shift around when asked

questions that appeared to elicit discomfort . . . speech was soft and inconsistent in prosody.

AR 395. Dr. Zagotta said much the same thing in the "Mental Status Examination (MSE)" and "Summary and Conclusion" portions of his report. Dr. Zagotta noted that Michael's MSE, which was "unremarkable and within normal limits," was an emphasis item during the evaluation. AR 398. Dr. Zagotta's suggested diagnosis for Michael was anxiety disorder (social, generalized) "by history and supported by interview data." *Id.*

With regard to the opinion evidence, the ALJ gave treating cardiologist Param Singh, M.D.'s April 2016 letter "little weight." AR 43. In that letter, Dr. Singh wrote that it was clear Michael experienced severe anxiety which might inhibit his ability to hold a job. The ALJ explained Dr. Singh's assessment "was not within his specialty of practice and did not include any specific limitations or abilities that would be compromised by the claimant's anxiety." *Id*. The ALJ gave APN Roth's April 2016 letter and October 2017 mental health assessment opinion "little weight." AR 43-44. In her April 2016 assessment, APN Roth stated she did not believe Michael could work in an environment which would allow him to socialize and interact with others. She explained social situations caused Michael extreme physical and emotional distress, and due to that, he had refused to go into social situations unless accompanied by a member of his family. She stated that even with the support of his family, Michael did not feel comfortable and would refuse to go to stores, restaurants, or ride the bus. Further, Michael experienced extreme distress including gastrointestinal symptoms and a sense of panic if he had to socialize with others even in a superficial way. In her October 2017 mental health assessment, APN Roth believed Michael experienced extreme difficulty in interacting with others, and he was unable to minimally adapt to changes in his

environment, he was incapable of even low stress work, and he would miss more than four days of work per month due to mentally induced symptoms.

Two State Agency psychological consultants determined Michael experienced moderate problems with social interaction and concentration, persistence, or pace. The ALJ found their findings "are supported by the evidence showing that the claimant experiences severe problems with social anxiety and some difficulty with concentration. However, the degree of the claimant's agoraphobia supports a finding more in line with a marked limitations." AR 44. Thus, the ALJ assigned their opinions "some weight." *Id.*

## IV

Michael argues: 1) the ALJ failed to draw a logical connection between his finding of RFC and the record, and his own findings on the severity of Michael's social anxiety; and 2) the ALJ erred in failing to articulate consideration of the listing for weight loss.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform his past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Michael claims error on the ALJ's part at Steps Three and Four.

## A

Michael argues that the ALJ's RFC finding fails to logically follow from the evidence of record and from his own findings. Specifically, Michael contends that the ALJ's RFC finding makes no mention of the functional consequences of agoraphobia, and the RFC especially fails to mention any limits on Michael's ability to attend the workplace on a full-time basis or that he requires accompaniment by a family member. The Commissioner argues the record shows the ALJ applied the correct legal standards and reached a reasoned conclusion supported by substantial evidence. In particular, the Commissioner contends psychological consultative examiner Dr. Zagotta's observations supported the RFC restrictions and did not support greater social restrictions, Michael's own testimony along with the objective record supported some social restrictions, and the ALJ's evaluation of the medical opinion evidence supported his RFC finding.

The Commissioner insists Michael's argument "only wins the day if marked restrictions are necessarily work preclusive, which they are not." Dft's MSA (Doc. 12-1 at pg. 10). "Marked" limitation is defined as follows: "Your functioning in

9

this area independently, appropriately, effectively, and on a sustained basis is *seriously limited*." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F) (emphasis added). "Occasionally" is defined by the Dictionary of Titles (the definition to which the ALJ pointed in questioning the VE) as follows: the "activity or condition exists up to 1/3 of the time." *Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer*, https://occupationalinfo.org/appendxc_1.html (last visited July 1, 2020). The Social Security Administration's Program Operations Manual System (POMS) explains that use of the term "occasionally" in a RFC "means that the activity or condition occurs at least once *up to one-third* of an 8-hour workday." POMS § DI 25001.001(A)(53) (emphasis added). Thus, at first glance, the ALJ's finding that Michael could have "occasional" interaction with supervisors, coworkers, and the public does not follow from the ALJ's finding that Michael had "marked" limitation in the functional area of interacting with others. Upon closer consideration of the entirety of the ALJ's Decision, the Court remains unable to trace the path of the ALJ's reasoning. *See Scott*, 297 F.3d at 595 ("We have repeatedly admonished ALJs to sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and . . . to enable us to trace the path of their reasoning").

An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record"). At Step Three in his Decision, the ALJ cited the following evidence as "consistent with" his finding that Michael has marked limitation in interacting with others: Michael had severe problems with his ability to socialize with others,

10

shop in stores, and go outside unaccompanied by others. AR 40.[4]  Later in his Decision, the ALJ discussed Michael's subjective complaints that he did not handle stress or changes in routine, his complaints in 2015 and 2017 that he was anxious and fearful with nausea brought on by anxiety and fear of leaving his house, and his statements that he did not like going out in public for fear people may look at him and watch him.  The ALJ also considered that Michael was referred for treatment with a psychiatrist in July 2015, and he was diagnosed with agoraphobia and panic disorder in September 2015.  The ALJ detailed treating physician Dr. Singh's April 2016 letter in which Dr. Singh stated Michael experienced severe anxiety which might inhibit his ability to hold a job, treating APN Roth's April 2016 letter in which she stated she did not believe Michael could work in an environment which would allow him to socialize and interact with others, and APN Roth's October 2017 mental health assessment in which she opined Michael had extreme difficulty in interacting with others. As for the State Agency psychological consultants' opinions that Michael had only moderate problems with social interaction and concentration, persistence, or pace, the ALJ explained those findings were supported by evidence showing that Michael experienced "severe problems with social anxiety and some difficulty with concentration[.]" AR 44.  The ALJ further explained the degree of Michael's agoraphobia "supports a finding more in line with a marked limitation" such that he gave the consultants' opinions only "some weight."  *Id*.

Dr. Singh's treatment notes, dated a year apart, each indicated Michael had "very severe anxiety," he was not a very good historian, and he was hesitant to

---

[4] The Court finds it somewhat curious that the ALJ cited in support of his finding of marked limitation in interacting with others the fact Michael reported getting along well with authority figures and having never been fired from a job because of problems getting along with others.  *See* AR 40.  The ALJ did so even though he expressly found at the hearing that Michael had *no* past relevant work as far as Social Security went.  *See* AR 67.

answer all of the doctor's questions. APN Roth's treatment notes provided: Michael's anxiety was aggravated by social interactions and was relieved by being at home; he reported problems with the thought of leaving the house and reported he would only leave the home with his mother and grandmother; he reported he had "lots of social anxiety;" he had poor eye contact and was guarded; his grandmother reported Michael had a lot of social anxiety; Michael's medications helped but he still struggled in a social setting; Michael reported he had symptoms when he went out in public; and Michael refused to go out in public without his mother or grandmother. During an interview with the Social Security Administration, the interviewer observed Michael avoided eye contact and was assisted by his grandmother. AR 206. The foregoing evidence substantially supports the ALJ's finding that Michael had "marked" limitation in interacting with others. The ALJ also explicitly recognized that APN Roth's assessments were "very broadly consistent with the claimant's cited difficulties . . . ." AR 44.

In spite of such record evidence, the ALJ's own explanation as to the weight he gave the State Agency consultants' opinions, and the ALJ's explicit recognition that APN Roth's assessments were "very broadly consistent with the claimant's cited difficulties" – all of which substantially support the ALJ's very own finding that Michael had "marked" limitation in interacting with others – the ALJ determined Michael remained capable of occasional interaction with supervisors, coworkers, and the public. The Court cannot see how the ALJ went from the plethora of evidence supportive of Michael's *serious* limitation in social interaction to the conclusion he remained capable of interacting with others in a work setting up to 1/3 of the workday. The Commissioner's reliance upon the ALJ's consideration of the opinion evidence as supportive of an "occasional" limitation is misplaced.

20 C.F.R. § 416.927(c) provides:

> How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

The listed factors include: 1) examining relationship; 2) treatment relationship, which in turn includes length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors brought to the Social Security Administration's attention. *Id*. An ALJ must give controlling weight to the medical opinion of a treating physician only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." 20 C.F.R. § 416.927(c)(2).[5]

With regard to APN Roth's opinions, the ALJ determined they conflicted with Dr. Zagotta's as the latter found few problems relating to Michael's psychological health, Roth's treatment notes indicated some problems but not to the extreme degree she reported, and Roth was not an acceptable medical source for medical opinion evidence. But as the ALJ noted in the Decision, Dr. Zagotta's mental examination of Michael revealed an anxious mood and affect, apparent discomfort with the examination, soft speech and inconsistent in prosody, and some indication of fidgeting and shifting. In other words, Michael's *actual* functioning during the mental status examination was consistent with Michael's behavior "when presented with even superficial public contact" to which Roth cited in support of her assessment, was consistent with Michael's subjective

---

[5] The treating physician rule found in 20 C.F.R. § 404.1527 has since been eliminated by the Social Security administration. However, the rules in § 404.1527 apply to claims filed before March 27, 2017.

statements as to his social anxiety, and was consistent with a finding of "marked" limitation in social interaction.

With regard to Dr. Singh's opinion, the ALJ gave it only little weight as it was not within his specialty of practice and did not include any specific limitations or abilities that would be compromised by Michael's anxiety. As previously detailed, Dr. Singh indicated in his treatment notes that Michael had very severe anxiety, was not a very good historian, and was hesitant to answer all of his questions. In other words, Michael's *actual* functioning during his visits with Dr. Singh was consistent with Dr. Singh's statement that Michael suffered from severe anxiety, was consistent with APN Roth's assessments, was consistent with his behavior during Dr. Zagotta's mental status examination, and was consistent with a finding of "marked" limitation in social interaction. Michael cites his July 2015 interview with the Social Security administration at which time the interviewer noted Michael avoided eye contact and was assisted by his grandmother. In other words, Michael's *actual* functioning at that time was consistent with Dr. Singh's statement that Michael suffered from severe anxiety, was consistent with APN Roth's assessments, was consistent with his behavior during Dr. Zagotta's mental status examination, and was consistent with a finding of "marked" limitation in social interaction.

To summarize, Michael exhibited anxiety and discomfort interacting with Dr. Zagotta for just 30 minutes, interacting with his treating (familiar) cardiologist Dr. Singh for the length of an office visit, and interacting with a Social Security interviewer. Nowhere in his Decision does the ALJ reconcile the evidence of Michael's actual functioning when interacting with people other than his mother and grandmother outside his home with the finding that Michael could interact with supervisors, coworkers, and the public outside of his home for up to 1/3 of an eight-hour workday (more than two hours each day, five days a week). *See* SSR

96-8p at *1 ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule").  While the Court may not reweigh the evidence, the Court need not turn a blind eye to evidence of record which only magnifies the logical *dis*connect between the evidence of record and the ALJ's marked limitation finding and the ultimate RFC finding which allows for occasional interaction with others.  Simply put, the ALJ failed to build a logical bridge between the evidence and the result.  *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (explaining that an ALJ's decision will be upheld if it uses the correct legal standards, is supported by substantial evidence, and "builds an accurate and logical bridge from the evidence to the ALJ's conclusion").  This case must be remanded.

### B

Because the undersigned recommends this case be remanded for the reasons stated *supra*, the undersigned does not reach the merits of Michael's second argument that the ALJ erred in failing to articulate consideration of the listing for weight loss.  Nevertheless, given the record evidence of Michael's low BMI on several occasions, epigastric pain, and Michael's complaints of nausea brought on by anxiety, it would behoove the Commissioner on remand to explicitly consider Listing 5.08 (Weight loss due to any digestive disorder) at Step Three of the five-step test.

### V

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 9) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be denied; and 3) this case be remanded to the

Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on July 2, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE